IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| THOMAS BRENNAN, an individual, | Case No. 3:20-cv-1965 |
| Plaintiff, | COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| IES ENERGY SOLUTIONS, LLC, an Ohio limited liability company, | |
| Defendant. | |

Plaintiff, Thomas Brennan ("Plaintiff"), by and through his attorneys, brings this action against Defendant, IES Energy Solutions, LLC ("Defendant" or "IES"), and alleges, on personal knowledge as to all facts related to him and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendant, for its unlawful employment scheme that denies Plaintiff wages and benefits to which he was (and is) lawfully entitled.

2. Specifically, Defendant incorrectly treated Plaintiff as an independent contractor even though he was a non-exempt employee, and failed to reimburse him for job-related expenses and, further, failed to pay him in a timely fashion, the legally mandated minimum wage for all hours worked and minimum overtime rate for hours worked in excess of 40 hours per workweek. Moreover, when Plaintiff complained that he was being misclassified as an independent contractor and demanded that he be afforded the same benefits provided to IES employees, he was immediately terminated.

3. Through this action, Plaintiff charges IES with violations of, *inter alia*, the provisions of: (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206; (2) FLSA, 29 U.S.C. § 207; (3) Ohio's Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code Ann.

1

("ORC") § 4111.02; (4) OMFWSA, ORC § 4111.03; (5) Ohio Prompt Pay Act ("OPPA"), ORC § 4113.15; (6) Michigan Workforce Opportunity Act ("WOWA"), Mich. Comp. Laws Ann. ("MCL") § 408.414; (7) WOWA, MCL § 408.414a; (8) FLSA, 29 U.S.C. §215; and (9) Ohio Constitution, Article II, § 34a; and further alleges an (10) unjust enrichment claim.

4. Plaintiff seeks, *inter alia*, compensatory and/or punitive damages, injunctive and declaratory relief, pre- and post-judgment interest, statutory and/or liquidated damages, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this matter under 28 U.S.C. § 1331. Specifically, this action arises under the FLSA, 29 U.S.C. § 201, *et seq*. Jurisdiction over the state law claims are pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant: (a) is authorized to conduct business in this district and have intentionally availed itself of the laws within this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.

## PARTIES

7. Plaintiff is a resident of Blissfield, Lenawee County, Michigan, who was employed by Defendant and treated by Defendant as an independent contractor from in or around June 2018 to on or about July 22, 2020.

8. Defendant is an Ohio limited liability company, doing business in Michigan and Ohio, with its company headquarters located in Toledo, Lucas County, Ohio.

## GENERAL ALLEGATIONS

A. **Plaintiff's Employment with Defendant**

9. Defendant provides various insulation services (such as installing insulation in crawl spaces, attics, and pole barns) to individual homeowners, as well as other commercial

building owners, engineers, architects and consultants, builders, general contractors, and HVAC companies located in Michigan and Ohio.

10. In or around June 2018, Defendant employed Plaintiff to market Defendant's services to leads (i.e., potential customers) generated by Defendant, as well as distribute Defendant's marketing materials, including door hangers, in certain neighborhoods.

11. Plaintiff did not have a written contract to perform work for Defendant.

12. Plaintiff had the ability to work for Defendant indefinitely, subject to his right to resign and Defendant's right to terminate him.

13. The work performed by Plaintiff was the primary way in which Defendant was able to secure customers to apply for its services.

14. Plaintiff was hired without regard to any prior sales experience and/or background in sales.

15. Defendant required Plaintiff to work from 9:00 a.m. to 9:00 p.m., Monday through Saturday.  At all relevant times herein, Plaintiff worked exclusively for IES.

16. If Plaintiff needed to take time off for any reason, he had to get it approved by Defendant.

17. At or around the time of his hiring, Defendant required Plaintiff to go through training, which lasted approximately two and a half weeks, Monday through Friday, 4 to 5 hours per day.  Plaintiff was not paid for that time.

18. Specifically, Defendant trained him regarding IES and the industry background, the services provided by IES, the procedures to follow when presenting IES's services to potential customers, and further taught him various sales techniques.

19. Defendant even provided Plaintiff with a "pitch book," a detailed script that Plaintiff had to follow when making pitches to potential customers, which differed based on the service being marketed.

20. Plaintiff was required to practice those pitches at length and was directed to memorize not only the words, but the type of body language to use when making the pitch.

21. Defendant also held mandatory weekly meetings where Plaintiff, and others like him, were required to provide a report to Defendant with respect to customers who did not ultimately sign up for Defendant's services, discussed and analyzed new sales techniques, and participated in sales role-play.  Plaintiff was never paid for his participation in the mandatory weekly meetings.

22. Plaintiff did not independently generate his own leads.  Instead, all leads were generated and assigned to him by Defendant.

23. On a typical day, Defendant sent Plaintiff three to four leads, usually at 10:00 a.m., 1:00 p.m., 4:00 p.m., and 7:00 p.m., with specific directions as to what type of service to market to the leads.  This gave Plaintiff two to three hours to drive to the lead's residence or place of business, speak to the lead, measure the surface area to calculate the approximate cost of the job, and assist the lead in filling out IES forms, in those instances when the lead decided to sign up for IES's services.

24. Defendant services customers within a 60 to 70-mile radius from its office located in Toledo, Ohio.  Thus, during his employment with Defendant, Plaintiff met potential customers who were located as far away as Detroit, Michigan and Findlay, Ohio.

25. On average, Plaintiff drove, using his personal vehicle, approximately 300 to 400 miles a day.

26. Defendant required Plaintiff to incur and/or pay all job-related expenses, including but not limited to, automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellular telephone charges, and other equipment (such as, for example, temperature guns, tape measures, and legal pad papers) necessary to complete his job duties.

27. Defendant never reimbursed Plaintiff for any job-related expenses.

28. Moreover, because Defendant incorrectly classified Plaintiff as an independent contractor, Plaintiff had to pay all taxes on all income he earned from IES.

29. Defendant required Plaintiff to wear a standard uniform when meeting with potential customers, which consisted of a polo shirt with IES's logo on it, and jeans. Plaintiff was told he would be charged for the IES shirt if he did not return it upon his departure.

30. If Plaintiff did not adhere to IES's rules and procedures or issues arose with respect to the performance of his job, he was reprimanded and/or disciplined by Defendant. For example, Defendant would send him less leads or a group of leads that were located very far away, and on one occasion, even suspended him for a week.

**B.     Defendant Had Sole Discretion to Accept or Reject the Customer's Application for Its Services**

31. When Plaintiff met with potential customers, he had to use materials created and provided for by Defendant, which included, for example, IES's brochure, customer application ("Application") and other related forms.

32. The Application was only the first step in signing up a potential customer up for Defendant's service.

33. The fact that the potential customer signed the Application did not entitle the potential customer to engage Defendant's services.

34. The sale did not occur until Plaintiff submitted the signed Application to Defendant for review, which then determined whether to accept or reject the Application.

35. There were reasons outside the control of Plaintiff as to why a sale might not be completed. For example, Defendant might reject, and did, in fact, reject, some Applications because it determined the job was not profitable for IES and/or that it did not have the capacity to provide that specific service to the potential customer at that time.

36. Accordingly, IES retained sole discretion to accept or reject the Application. In other words, the Applications obtained by Plaintiff were merely proposals until Defendant accepted them.

    **C.**     **Plaintiff Was Not Paid Minimum Wage for All Hours Worked and Overtime Pay for All Hours Worked Over 40 Hours Per Week**

37. Plaintiff was paid on a sliding-scale commission basis. Specifically, he received a percentage of the profits made from a sale. The commission percentage typically ranged from 5% to 9%, depending on the final sales price.

38. The commission structure was determined by Defendant and it was non-negotiable.

39. After Defendant accepted a signed Application, Plaintiff was required to fill out and submit IES's "Commission Claim Sheet" ("CCS") to Defendant for approval. On the CCS, Plaintiff was required to write down, among other things, the customer's name, the type of service requested, and the amount owed to Plaintiff for the installation based on the commission structure provided for by Defendant.

40. Plaintiff was not paid until after the installation was completed and after IES was paid for the installation.

41. On several occasions, Defendant paid Plaintiff less than what he had calculated on the CCS. When Plaintiff inquired as to why there was a discrepancy, Defendant told him, "you get what we pay you, if you don't like it, then quit."

42. Paychecks were supposed to be distributed every Friday. However, because Plaintiff was not paid until after an installation was completed and paid for by the customer, some workweeks he received no pay at all.

43. As a result of Defendant's method of compensating Plaintiff and its failure to reimburse Plaintiff for job-related expenses, Plaintiff was not paid the minimum wage for all hours worked in a given workweek and was not paid overtime pay for hours he worked over 40 hours in a given workweek.

44. The exact amounts Plaintiff's pay was regularly deficient of minimum wage and/or overtime pay in each given workweek during his employment can be determined, in part, by Defendant's pay records.

45. At all relevant times herein, Plaintiff was a non-exempt employee of Defendant under federal and state wage and hour laws, because nothing about his pay, title, duties, or anything else qualified him for any exemption.

46. Non-exempt employees are entitled to be paid minimum wage for all hours worked and overtime pay for all hours worked over 40 hours per workweek.

47. Plaintiff was not paid for, and still has not been paid, minimum wages for all hours worked and overtime pay for all hours worked over 40 hours per workweek.

**D. Defendant Retaliated Against Plaintiff for Complaining That He Was Misclassified as an Independent Contractor**

48. On or around July 22, 2020, Plaintiff complained to Defendant that he should be a W-2 employee instead of a 1099 independent contractor, and that Defendant should provide him with certain benefits afforded to IES employees, including, for example, health insurance, worker's compensation, unemployment benefits, COVID-19 aid, and reimbursement of certain expenses.

49. That same day, Defendant effectively terminated Plaintiff, asserting: "Your[sic] an independent Salesperson 1099 . . . . You don't[sic] get benefits. . . . Your # is being blocked only contact is calling office. . . . you are no longer allowed on our property at all."

**FIRST CLAIM FOR RELIEF**
**Failure to Pay Minimum Wage**
**(Violation of the FLSA, 29 U.S.C. § 201, *et seq*.)**

50. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

51. At all relevant times herein, Defendant has been and continues to be an employer within the meaning of the FLSA, 29 U.S.C. §§ 203 and 206.

52. The FLSA requires "every employer [to] pay each of his employees who in any workweek is engaged in commerce" at least minimum wage. *See* 29 U.S.C. §§ 206(a)(1).

53. Specifically, during the relevant time period, Defendant was required to pay Plaintiff a minimum wage of not less than $7.25 per hour pursuant to the FLSA. *Id.*

54. Department of Labor regulations provide that "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'" 29 C.F.R. § 531.35. The FLSA's minimum wage requirement are not met "where the employee 'kicks-back' directly or indirectly" all or part of the employer's wage payment. *Id.* An FLSA violation occurs "in any workweek when the cost of [tools of the trade] purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Id.*

55. At all relevant times herein, Plaintiff did not qualify for any exemption from the minimum wage obligations imposed by the FLSA.

56. At all relevant times herein, Plaintiff was an employee of IES – and not an independent contractor – and thus, was entitled to receive the protections afforded by the FLSA.

57. Defendant knew or should have known that Plaintiff was entitled to minimum wage pay under the FLSA.

58. Despite this knowledge, Defendant paid Plaintiff a certain percentage of the profits made from the service ultimately purchased and paid for by the customer, which did not equal to or exceed the minimum wage rate.

59. In addition to the low rates of compensation, Defendant required Plaintiff to pay for all job-related expenses out-of-pocket and did not reimburse him for those costs. Thus, the amounts paid to Plaintiff "finally and unconditionally or free and clear" did not equal to or exceed the minimum wage rate.

60. Defendant's repeated and intentional failure to pay Plaintiff at least minimum wage for all hours he worked was willful and not done in good faith within the meaning of the FLSA. *See* 29 U.S.C. § 260.

61. As a result of Defendant's willful violations of the FLSA, Plaintiff was injured because he did not receive minimum wages due to him.

62. The exact amount of compensation that Defendant has failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

63. The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiff is entitled to review his records of hours worked to determine the exact amount of minimum wages he is owed by Defendant. Absent Defendant keeping these records as required by law, Plaintiff is entitled to submit his information about the number of hours worked.

64. Accordingly, Plaintiff seeks an award of unpaid minimum wages, an additional equal amount as liquidated damages as provided by statute, and reasonable attorneys' fees and costs as provided by statute.

## SECOND CLAIM FOR RELIEF
### Failure to Pay Overtime
**(Violation of the FLSA, 29 U.S.C. § 201, *et seq*.)**

65. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

66. At all relevant times herein, Defendant has been and continues to be an employer within the meaning of the FLSA, 29 U.S.C. §§ 203 and 207.

67. FLSA required Defendant to pay Plaintiff at least one and one-half times his regular rate of pay for all hours worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207(a)(1).

68. Department of Labor regulations provide that "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'" 29 C.F.R. § 531.35. The FLSA's minimum wage requirement are not met "where the employee 'kicks-back' directly or indirectly" all or part of the employer's wage payment. *Id.* An FLSA violation occurs "in any workweek when the cost

9

of [tools of the trade] purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Id.*

69. At all relevant times herein, Plaintiff did not qualify for any exemption from the minimum wage obligations imposed by the FLSA.

70. At all relevant times herein, Plaintiff was an employee of IES – and not an independent contractor – and, thus, was entitled to receive the protections afforded by the FLSA.

71. Defendant knew or should have known that Plaintiff was entitled to overtime pay under the FLSA.

72. Despite this knowledge, Defendant did not pay Plaintiff at least one and one-half times his regular rate of pay for all hours worked in excess of 40 hours per workweek.

73. Moreover, Defendant required Plaintiff to pay for all job-related expenses out-of-pocket and did not reimburse him for those significant costs. Thus, Defendant failed to compensate Plaintiff at time-and-one-half his regular rate of pay for hours worked over 40 hours in a workweek.

74. Defendant's repeated and intentional failure to pay Plaintiff overtime wage pay was willful and was not done in good faith within the meaning of the FLSA. *See* 29 U.S.C. § 260.

75. As a result of Defendant's willful violations of the FLSA, Plaintiff was injured because he did not receive overtime wages due to him.

76. The exact amount of compensation that Defendant has failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

77. The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiff is entitled to review his records of hours worked to determine the exact amount of minimum wages owed by Defendant. Absent Defendant keeping these records as required by law, Plaintiff is entitled to submit his information about the number of hours worked.

78. Accordingly, Plaintiff seeks an award of unpaid overtime wages, an additional equal amount as liquidated damages as provided by statute, and reasonable attorneys' fees and costs as provided by statute.

**THIRD CLAIM FOR RELIEF**
**Failure to Pay Minimum Wage**
**(Violation of OMFWSA, ORC § 4111.02)**

79. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

80. At all relevant times herein, Defendant was an employer covered by the minimum wage requirements set forth under OMFWSA, ORC § 4111.02 and the Ohio Constitution, Article II, § 34a.

81. At all relevant times herein, Plaintiff did not qualify for any exemption from the minimum wage obligations imposed by Ohio law.

82. At all relevant times herein, Plaintiff was an employee of IES – and not an independent contractor – and, thus, was entitled to receive the protections afforded by Ohio law.

83. Ohio law requires an employer to pay its employees at a wage rate not less than the minimum wage rate set forth in the Ohio Constitution, Article II, § 34a.

84. Defendant knew or should have known that Plaintiff was entitled to a wage rate not less than the minimum wage set forth in the Ohio Constitution, Article II, § 34a.

85. Despite this knowledge, Defendant paid Plaintiff a certain percentage of the profits made from the service ultimately purchased and paid for by the customer, which did not equal to or exceed the minimum wage rate.

86. Moreover, Defendant required Plaintiff to pay job-related expenses out-of-pocket and did not reimburse him for those costs, and, thus, Defendant failed to pay Plaintiff at a wage rate not less than the minimum wage rate set forth in the Ohio Constitution, Article II, § 34a.

87. Defendant's repeated and knowing failure to pay Plaintiff for all hours worked at a rate not less than the minimum wage rate was a violation of ORC § 4111.02, and, as such, Defendant acted willfully.

88. The exact amount of compensation that Defendant has failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

89. The ORC requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment. Plaintiff is entitled to review his records of hours worked to determine the exact amount of overtime wages owed by Defendant. Absent Defendant keeping these records as required by law, Plaintiff is entitled to submit his information about the number of hours he worked for Defendant.

90. Accordingly, Plaintiff seeks an award of unpaid minimum wages, an additional two times unpaid wages/unreimbursed expenses in damages under Ohio Constitution, Article II, § 34a, and reasonable attorneys' fees and costs as provided by statute.

**FOURTH CLAIM FOR RELIEF**
**Failure to Pay Overtime**
**(Violation of the OMFWSA, ORC § 4111.03)**

91. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

92. At all relevant times herein, Defendant was an employer covered by the overtime requirements set forth in OMFWSA, ORC 4111.03.

93. At all relevant times herein, Plaintiff did not qualify for any exemption from the minimum wage obligations imposed by Ohio law.

94. At all relevant times herein, Plaintiff was an employee of IES – not an independent contractor – and, thus, was entitled to receive the protections afforded by Ohio law.

95. Ohio law requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over forty in

one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* ORC § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1).

96. Defendant knew or should have known that Plaintiff was entitled to overtime wage pay for all hours worked over 40 hours in one workweek, as provided for under Ohio law.

97. Despite this knowledge, Defendant did not pay Plaintiff overtime wage pay for all hours worked over 40 hours in one workweek, as provided for under Ohio law.

98. Moreover, Defendant required Plaintiff to pay for job-related expenses out-of-pocket and did not reimburse him for those costs, and, thus, Defendant failed to compensate Plaintiff at time-and-one-half his regular rate of pay for hours worked over 40 hours in a workweek.

99. Defendant's repeated and knowing failure to pay overtime wages to Plaintiff was a violation of ORC §4111.03, and, as such, Defendant acted willfully.

100. The exact amount of compensation that Defendant has failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

101. The ORC requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiff is entitled to review his records of hours worked to determine the exact amount of overtime wages owed by Defendant. Absent Defendant keeping these records as required by law, Plaintiff is entitled to submit his information about the number of hours he worked.

102. Accordingly, Plaintiff seeks an award of unpaid minimum wages, an additional two times unpaid wages/unreimbursed expenses in damages under Ohio Constitution, Article II, § 34a, and reasonable attorneys' fees and costs as provided by statute.

## FIFTH CLAIM FOR RELIEF
### Untimely Payment of Wages
### (Violation of OPPA, ORC § 4113.15)

103. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

104. At all relevant times herein, Defendant was an entity covered by the OPPA and Plaintiff was employed by Defendant within the meaning of the OPPA.

105. ORC § 4113.15(A) requires that Defendant pay Plaintiff all wages, including unpaid minimum and overtime wages, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the 15th day thereof, and on or before the 15th day of each month, for wages earned during the last half of the preceding calendar month.

106. However, Defendant did not pay Plaintiff all wages, including minimum and overtime wages within 30 days beyond his regularly scheduled payday.  ORC Section 4113.15(B).

107. Plaintiff's unpaid wages have remained unpaid for more than 30 days beyond his regularly scheduled payday.

108. Plaintiff has been harmed and continues to be harmed by such unpaid wages.

109. In violating the OPPA, Defendant acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

110. Accordingly, Defendant is liable, as liquidated damages, for 6% of the amount of the claim still unpaid or $200, whichever is greater.  *Id.*

## SIXTH CLAIM FOR RELIEF
### Failure to Pay Minimum Wage
### (Violation of the WOWA, MCL § 408.411, *et seq.*)

111. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein

112. At all relevant times herein, Defendant was an employer, within the meaning of the WOWA, MCL § 408.412.

113. At all relevant times herein, Plaintiff was an employee, within the meaning of the WOWA, MCL § 408.412.

114. Defendant knowingly, intentionally, and willfully failed to pay Plaintiff at least the Michigan minimum wage for all hours worked, in violation of the WOWA, MCL § 408.414.

115. As a result of Defendant's failure to pay Plaintiff the applicable Michigan minimum wage, Plaintiff is entitled to an award of damages, including, but not limited to, compensatory damages, liquidated damages in an amount equal to his compensatory damages, costs of his lawsuit, and his reasonable attorneys' fees pursuant to MCL § 408.419.

### SEVENTH CLAIM FOR RELIEF
### Failure to Pay Overtime
### (Violation of the WOWA, MCL § 408.411, *et seq.*)

116. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

117. At all relevant times herein, Defendant was an employer, within the meaning of the WOWA, MCL § 408.412.

118. At all relevant times herein, Plaintiff was an employee, within the meaning of the WOWA, MCL § 408.412.

119. Defendant knowingly, intentionally, and willfully failed to pay Plaintiff at least the appropriate Michigan overtime wage rate for hours worked in excess of 40 hours in a workweek, in violation of the WOWA, MCL § 408.414a.

120. As a result of Defendant's failure to pay Plaintiff the applicable Michigan overtime wage rate, Plaintiff is entitled to an award of damages, including, but not limited to, compensatory damages, liquidated damages in an amount equal to his compensatory damages, costs of his lawsuit, and his reasonable attorneys' fees pursuant to MCL § 408.419.

## EIGHTH CLAIM FOR RELIEF
### FLSA Unlawful Retaliation
**(Violation of the FLSA, 29 U.S.C. §215)**

121. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein

122. This claim is brought pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

123. Plaintiff engaged in a protected activity when he informed Defendant that IES had misclassified him as an independent contractor and that it had failed to provide him with benefits afforded to employees under federal and state law.

124. Defendant knew that Plaintiff engaged in such protected activity.

125. The same day that Plaintiff questioned IES about his job misclassification, Defendant terminated him.

126. Because Plaintiff engaged in the aforementioned protected activity, Defendant took an adverse employment action by terminating Plaintiff's employment and denying him the compensation, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

127. As a direct and proximate result of Defendant's willful and intentional conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable.

128. Accordingly, Plaintiff seeks liquidated damages, punitive damages, interest and attorneys' fees, and all other remedies available as a result of Defendant's retaliation, in violation of 29 U.S.C. §215.

## NINTH CLAIM FOR RELIEF
### Ohio Unlawful Retaliation
**(Violation of the Ohio Constitution, Article II, § 34a)**

129. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein

130. Article II, Section 34a of the Ohio Constitution prohibits employers from discharging or retaliating against an employee for exercising his/her rights in complaint or protest of failing to receive wages and/or benefits afforded to him/her as an employee.

131. Plaintiff exercised his rights in complaint or protest of Defendant misclassifying him as an independent contractor and failing to pay him wages and benefits due to him as an employee provided for under federal and state law.

132. Plaintiff was terminated the same day he complained or protested to Defendant.

133. As a result of and in response to Plaintiff exercising his rights, Defendant retaliated against him.

134. Because of Defendant's retaliatory actions in violation of Article II, Section 34a of the Ohio Constitution, Plaintiff is entitled to back wages, and damages provided under this section including at least $150 per day for each day that the retaliation continues, as well as costs and reasonable attorneys' fees.

## TENTH CLAIM FOR RELIEF
### Unjust Enrichment - Ohio

135. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

136. To recover on a claim of unjust enrichment under Ohio law, a party must show: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.

137. Defendant has received and benefited from the uncompensated labor of Plaintiff, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

138. At all relevant times herein, Defendant devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiff without

payment of minimum wages for all hours worked and overtime pay for all hours worked over 40 hours per workweek.

139. Additionally, Plaintiff has advanced certain payment for obligations which were owed by Defendant for significant costs and expenses which were necessary for the operation of Defendant's business, including, but not limited to, automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellular telephone charges, and other equipment necessary to complete his job duties.

140. At the same time, Defendant retained benefits resulting from its refusal to pay its legal obligations and business expenses as employer, including but not limited to, workman's compensation contributions, workman's compensation benefits, unemployment insurance payments, unemployment insurance, wages and overtime pay.

141. Contrary to all good faith and fair dealing, Defendant encouraged Plaintiff to perform work during the day while failing to pay him minimum wage for all hours worked and overtime wages for all hour worked over 40 hours per workweek.

142. By reason of having secured the work and efforts of Plaintiff without paying minimum wage for all hours worked and overtime wages for all hour worked over 40 hours per workweek, Defendant enjoyed reduced overhead with respect to its labor costs, and therefore realized additional earnings and profits to its own benefit and to the detriment of Plaintiff.

143. Defendant retained and continue to retain such benefits contrary to fundamental principles of justice, equity, and good conscience.

144. As a result, Plaintiff is entitled to judgment in an amount equal to the benefits unjustly retained by Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Compensatory and/or punitive damages in favor of Plaintiff, including actual damages, arising from Defendant's wrongful and illegal conduct;

2. An accounting by Defendant to Plaintiff of the amount of damages incurred by him;

3. Injunctive and declaratory relief;

4. Pre-judgment and post-judgment interest as may be allowed by law;

5. Statutory and/or liquidated damages;

6. An award of reasonable attorney's fees as provided by applicable law;

7. All costs of suit; and

8. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 1, 2020        GOLDENBERG SCHNEIDER, LPA

/s/ Jeffrey S. Goldenberg
Jeffrey S. Goldenberg (0063771)
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8297
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com

James E. Miller (*Pro Hac Vice* to be submitted)
Laurie Rubinow (*Pro Hac Vice* to be submitted)
SHEPHERD FINKELMAN MILLER
 & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
jmiller@sfmslaw.com
lrubinow@sfmslaw.com

Nathan C. Zipperian (*Pro Hac Vice* to be submitted)
SHEPHERD FINKELMAN MILLER
 & SHAH, LLP
1625 N Commerce Pkwy #320
Fort Lauderdale, FL 33326
Telephone: (866) 849-7545
Facsimile: (866) 300-7367

nzipperian@sfmslaw.com

Chiharu G. Sekino (*Pro Hac Vice* to be submitted)
Jaclyn M. Reinhart (*Pro Hac Vice* to be submitted)
SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
1230 Columbia Street, Suite 1140
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
csekino@sfmslaw.com
jreinhart@sfmslaw.com